UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDELSON, P.C., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | MISC. ACTION NO. 2:18-MC-980 |
| | § | |
| BANDAS LAW FIRM, P.C., *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER GRANTING WITHOUT PREJUDICE MOTIONS TO QUASH

Edelson PC ("Edelson"), an Illinois law firm, is suing Bandas Law Firm, PC, and Christopher Bandas (collectively, "Bandas") in the Eastern Division of the United States District Court for the Northern District of Illinois. Edelson filed a subpoena seeking records from First Community Bank (FCB) in Corpus Christi, Texas relating to Bandas's client trust account. Bandas and FCB filed motions to quash the subpoena in this Court on August 8, 2018 (D.E. 1, 2). For the reasons set forth below, the motions to quash the subpoena are granted, but Edelson may renew the request for a subpoena should circumstances warrant it in the future.

### BACKGROUND

Edelson is a law firm based in Illinois that frequently represents consumers in class action lawsuits. Bandas is a law firm based in Corpus Christi, Texas that routinely represents parties in class action lawsuits who object to proposed settlements. *Edelson PC v. Bandas Law Firm PC*, No. 16-C-11057, 2018 WL 3496085 (N.D. Ill. 2018) (slip op.). Edelson sued Bandas in federal court in Illinois, alleging that Bandas and two other

1 / 16

attorneys, one from Illinois and one from California, represent "professional objectors" who file frivolous objections to class action lawsuits in an effort to leverage lucrative payoffs by threatening to draw out class litigation through trial and appellate proceedings. *Id.* at *1. Edelson also named as defendants one person in California and twenty John Doe defendants who allegedly identify class action lawsuits and serve as class objectors. *Id.*

Edelson sued the defendants for violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-68 and also asserted claims under Illinois state law for abuse of process and the unauthorized practice of law.[1] *Id.* Edelson urged the court to label Bandas and the other attorney defendants "vexatious litigants" and to issue a permanent injunction pursuant to the All Writs Act, 28 U.S.C. § 1651. *Id.* On February 6, 2018 the district court dismissed Edelson's RICO Act claims for failure to allege predicate acts of racketeering but reserved judgment pending briefing on whether it had subject matter jurisdiction to review Edelson's state law claims. *Id.*

Following a motion by Edelson to dismiss non-diverse defendants, the court dismissed the California attorney and the John Doe defendants from the lawsuit and determined that it had diversity jurisdiction and could hear Edelson's state law claims against Bandas. *Id.* at 7-8. The court then dismissed Edelson's abuse of process cause of action but retained the unauthorized practice of law cause of action, finding that the allegations were sufficient to state a plausible claim for relief. *Id.* at *8-11. The court

---

[1] It is undisputed that Bandas is not licensed to practice law in Illinois.

also stated that Edelson was welcome to reassert its request for judicial action pursuant to the All Writs Act during the course of the litigation.

After the ruling by the Illinois district court, Edelson served a subpoena on FCB, asking for all documents related to any transfer of funds from any Bandas account to a list of 108 individuals and law firms (*See* Subpoena and Rider to Subpoena, D.E. 2-1). FCB moves to quash the subpoena on the following grounds: (1) The subpoena is defective because it contains two different compliance dates; (2) Responding to the subpoena may cause FCB to violate the Gramm-Leach-Billey Act (GLBA), 15 U.S.C. § 6801; (3) Edelson has not provided evidence or assurance to FCB that it has complied with Section 59.006 of the Texas Finance Code; (4) The subpoena is overly broad because it asks FCB to produce documents not in its possession, custody, or control; (5) The subpoena is overly vague and ambiguous; (6) The subpoena is overly broad, burdensome, and even punitive as directed at FCB; (7) The subpoena asks FCB to disclose confidential commercial information; (8) The subpoena requests documents from January 1, 2008 to the present but FCB maintains wire transfer records for only five years and other records for only seven years; (9) The subpoena does not allow sufficient time to reply; (10) The subpoena seeks irrelevant documents; and (11) The subpoena requires the cost of production of documents to be borne by FCB.

Bandas argues the following in its motion to quash: (1) The records sought are confidential financial records; (2) The records are not relevant to the lawsuit as there are no pending claims for damages; (3) The only remaining cause of action in the lawsuit is for injunctive relief to prohibit Bandas from engaging in the unauthorized practice of law

in Illinois and Bandas made an offer of judgment for injunctive relief; and (4) The request for documents is overly broad.

In response to the motion to quash, Edelson asserts the following: (1) It has the right to seek an injunction to stop Bandas from practicing law in Illinois; (2) It has the right to have Bandas declared a vexatious litigant under the All Writs Act; (3) It seeks only a limited number of relevant documents; (4) Documents showing the flow of money to and from Bandas are relevant; (5) The subpoena is targeted to gather only evidence Edelson needed to show that Bandas engaged in the unauthorized practice of law in Illinois; (6) FCB has not identified any protected privilege which warrants quashing the subpoena; and (7) Bandas does not have standing to quash the subpoena and fails to cite any authority in support of his motion.

## APPLICABLE LAW

### A. Bandas's Standing to Quash the Subpoena

Edelson argues that Bandas does not have standing to quash the subpeona. Pursuant to Rule 45, parties have limited standing to quash subpoenas served on non-parties. *Bounds v. Capital Area Family Violence Intervention Center, Inc.*, 314 F.R.D. 214 (M.D. La. 2016). A plaintiff cannot challenge a Rule 45 subpoena on the grounds that it is overly broad, seeks irrelevant information, or violates another person's privacy rights. *Id.* In order to challenge a subpoena issued to a non-party, the party must have either "'possession of the materials subpoenaed'" or a "'personal right or privilege with respect to the materials subpoenaed.'" *Jez v. Dow Chemical Co., Inc.*, 402 F.Supp.2d

783, 784-785 (S.D. Tex. 2005) (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)).

Bandas does not assert that it has in its possession the material subpoenaed. Thus, the arguments Bandas makes in its motion to quash will be considered only to the extent that it asserts a privilege related to the requested material.

### B. Unauthorized Practice of Law in Illinois

Edelson seeks a finding from the Illinois district court that Bandas has engaged in the unauthorized practice of law under the Illinois Attorney Act, 705 ILCS 205/1. Attorneys and law firms have standing to seek injunctive relief under the act because "'the practice of law by an entity not licensed constitutes an infringement upon the rights of those who are properly licensed.'" *Edelson*, 2018 WL 3496085 at *9 (quoting *Richard F. Mallen & Assoc., Ltd. v. Myinjuryclaim.com Corp.*, 769 N.E.2d 74, 76 (1st Dist. 2002) and *King v. First Cap. Fin. Servs. Corp.*, 828 N.E.2d 1155, 1168 (2005)). There is no private right to seek money damages under the statute. *King*, 828 N.E.2d at 1168.

### C. All Writs Act

The All Writs Act, 28 U.S.C. § 1651, provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act does not create jurisdiction in a district court, but empowers it only to issue writs "'in aid of jurisdiction previously acquired on some other independent ground.'" *Singh v. Duane Morris LLP*, 538 F.3d 334, 341 (5th Cir. 2008) (quoting *Brittingham v. Comm'r*, 451 F.2d 315, 317 (5th Cir. 1971)).

Under the Act, district courts retain "the inherent power to enter pre-filing orders against vexatious litigants." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). When determining whether to issue a pre-filing injunction, courts look at (1) whether the litigant's history involves vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has caused an unnecessary burden on the courts; and (5) whether other sanctions would be sufficient to protect the courts and other parties. *Safir v. United States Lines, Inc.*, 729 F.2d 19, 24 (2d Cir. 1989). Edelson seeks the bank records to support its allegation that Bandas is a vexatious litigant and should be enjoined from filing lawsuits in Illinois.

**D. Effect of Offer of Judgment**

On August 10, 2018 Bandas served an offer of judgment on all counsel of record in accord with Fed. R. Civ. P. 68 (D.E. 1-3). Bandas offered to allow judgment to be entered against it, including a finding that it engaged in the unauthorized practice of law in Illinois and an order enjoining it from the further practice of law unless it obtains authorization from the Supreme Court of Illinois to practice law. In addition, Bandas agreed to entry of judgment for "costs then accrued," not including attorney's fees. The offer of judgment remains opens (D.E. 16 at pp. 2-3).

Edelson did not accept the offer of judgment and an unaccepted offer of judgment has no force. *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 666 (2016). "Like other

unaccepted contract offers, it creates no lasting right or obligation." *Id.* Accordingly, although Bandas offered Edelson all relief sought, because Edelson did not accept the offer, the issue is not moot and adversity exists between the parties. *Id.*

E. **The Gramm-Leach-Billey Act (GLBA)**

FCB cites the GLBA, 15 U.S.C. § 6801, as implemented by Regulation P, 12 CFR § 1016, as grounds for quashing the subpoena. The GLBA provides that with some exceptions, a financial institution may not disclose to a nonaffiliated third party any nonpublic personal information unless the financial institution provides proper notice to the consumer. 15 U.S.C. § 6802 (a). Several exceptions to the prohibition of disclosures exist, including the following:

> to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or governmental regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

15 U.S.C. § 6802(e)(8).

FCB argues that compliance with the subpoena may violate the GLBA, which does not have a safe harbor provision. FCB further asserts that the judicial process exception of 15 U.S.C. § 6802(e)(8) is not settled as to civil subpoenas, citing *Landry v. Union Planters Corp.*, No. Civ. A. 02-3617, 2003 WL 21355462 (E.D. La. 2003). However, *Landry* did not directly address the issue of whether a civil subpoena requesting nonpublic personal information violates GLBA. Rather, the court found that the information requested was "blind" information, with all personal identifiers redacted.

*Id.* at *6. Therefore, the customers' privacy was protected and the bank was protected from liability because the information did not constitute "nonpublic information." *Id.*

A review of decisions regarding the direct application of § 6802(e)(8) to civil subpoenas shows that courts generally find that the GLBA does not provide a basis to quash a properly executed subpoena. *See, e.g., Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F.Supp.2d 1369, 1371 (S.D. Fla. 2009) (finding that the GLBA expressly permits the discovery of financial records so long as certain prerequisites, such as the obtaining of a subpoena, are met); *Marks v. Global Mortgage Group, Inc.*, 218 F.R.D. 492, 497 (S.D. W.Va. 2003) (finding that the GLBA permits disclosure of nonpublic information when responding to judicial process and encouraging courts to fashion protective orders to protect privacy of consumers' financial information); *United States ex rel. Rigsby v. State Farm Fire and Casualty Co.*, No. 1:06CV433-HSO-RHW, 2016 WL 2997428 at *1 (S.D. Miss. 2016) (finding GLBA authorizes production of nonpublic personal information when responding to judicial process); *F.D.I.C. v Florescue*, No. 8:12-CV-2547-T-30TBM, 2014 WL 12617810 at *2 (M.D. Fla. 2014) (noting that GLBA contains exception allowing disclosures in response to judicial process, including authorized subpoenas); and *In re Suzuki*, No. 14-00516 JMS-KSC, 2014 WL 6908384 at * 4 (D. Haw. 2014) (finding that GLBA does not protect nonpublic information from disclosure in compliance with properly executed subpoena).

Case law does not support FCB's argument that compliance with the subpoena will cause it to violate the GLBA. Accordingly, the subpoena will not be quashed based on the statute.

## F. Texas Finance Code § 59.006

FCB also argues that it is being asked to release records concerning Bandas and the 108 other individuals and entities without receiving evidence that Edelson has complied with any part of Texas Finance Code § 59.006. Section 59.006(a) "provides the exclusive method for compelled discovery of a record of a financial institution relating to one or more customers but does not create a right of privacy in a record." In relevant part, Section 59.006(b) provides that a financial institution must produce a record in response to a record request only if the institution is given at least 24 days to comply and the requestor pays the institution the reasonable costs of complying. Section 59.006(c) provides that if the affected customer is not a party to the proceeding, the requesting party should give the customer notice of its rights to file a motion to quash and seek the customer's written consent. Section 59.006(d) provides that that if a customer who is not a party does not execute the written consent before the compliance is due, the requesting party may seek the production of any complying documents for *in camera* inspection. The court will decide if the document is relevant and whether portions should be redacted and shall issue a protective order preventing the record from being disclosed to a non-party or used by any person for any purpose other than resolving the dispute at issue in the lawsuit.

Section 59.006 is a procedural statute and does not create a right of privilege or privacy. *British Intern. Ins. Ltd. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 594 (W.D. Tex. 2000). Nor does it take precedence over federal discovery rules which address compliance with subpoenas. *Id. See also Poindexter v. Bonsukan*, 145

F.Supp.2d 800, 803 (E.D. Tex. 2001) (noting that as a general rule, discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure and not by state discovery practice). FCB has provided no authority for its contention that Edelson needs to comply with Section 59.006 of the Texas Financial Code and none was found. Accordingly, the state statute provides no grounds on which to quash the subpoena.

**G. Law Regarding Scope of Subpoena**

A court weighing a motion to quash or modify a subpoena must determine whether the subpoena (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from his or her residence; (3) requires disclosure of protected or privileged material; or (4) subjects a person to undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817-818 (5th Cir. 2004) (citing Fed. R. Civ. P. 45 (3)(A)(i)-(iv)).

**1. Timing and Protected or Privileged Material**

FCB first objects to the subpoena because it does not allow sufficient time to comply. However, the deadline for compliance passed while this motion to quash was pending and FCB did not comply with it. Thus, the time for compliance is not presently an issue.

FCB further objects that the subpoena requires disclosure of protected or privileged material, in particular, electronically stored information, metadata,[2] and the

---

[2] "Metadata" refers to information embedded in a native file or other data not ordinarily viewable or printable from the application that generated, edited, or modified the native

proprietary software used to conduct its daily, routine business (Mot. to Quash, D.E. 2 at p. 5). In response, Edelson asserts that it seeks only evidence of wire transfer records and checks from specific people and law firms to and from Bandas. Assuming that Edelson's request is limited to these documents, it does not appear to seek disclosure of protected or privileged material as the material relates to FCB.

### 2. Undue Burden

FCB also claims that the subpoena subjects it to an undue burden. A party moving to quash a subpoena has the burden of showing that complying with the subpoena would be unreasonable and oppressive. *Wiwa*, 392 F.3d at 818 (internal citations omitted). The court looks at the facts of the case, such as whether the party needs the documents and the nature and importance of the litigation. *Id.*

> To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad.

*Id.* The subpoena as written seeks "[a]ll documents, [electronically stored information], file systems, and digital media . . . produced in their Native Format with all associated Metadata intact" related to any transfer of funds to or from any Bandas account involving any of 108 individuals and law firms.

---

file which describes the characteristics, origins, usage, and validity of the electronic file as well as information generated automatically by the operation of a computer when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such a system (Subpoena Rider, D.E. 2-1).

Edelson responds that it would be willing to limit its request to records of transactions with the people listed in the subpoena, "particularly wire transfers and checks." If Edelson seeks only copies of wire transfers and checks between Bandas and the 108 individuals and law firms on the list, without the file systems, digital media, and metadata, it would make the request much less burdensome.

Nevertheless, the issues of relevance of the information requested and Edelson's need for the documents remain. FCB estimates that it will take sixty hours to compile the requested records at the bank's customary charge of $25.00 per hour. In addition, the request may require the bank to pay overtime at the time-and-a-half rate and also may require the use of information technology consultants and possibly third party data processing charges for retrieval of old data.

Edelson generated the list of 108 individuals and law firms from objections Bandas filed in nine class action lawsuits that either were filed in Illinois or involve an Illinois resident objector (Resp. to Mot. to Quash, D.E. 7 at p. 6 and n. 1). Edelson states that it has reason to believe that Bandas was paid for providing legal services in those cases but does not know "precisely how Bandas gets the money." Edelson seeks the bank records to determine how Bandas was paid. However, because Edelson already knows that Bandas filed the objections and Bandas has agreed that it engaged in the unauthorized practice of law, the information regarding how the firm was paid is of questionable relevance.

In addition, Edelson has made similar allegations against Bandas as part of another lawsuit, *Clark v. Gannett Co., Inc.*, 2018 IL App (1st) 172041, ¶ 25, where Edelson

moved, among other things, to strike objections to a class action settlement filed by Bandas and to require Bandas to obtain admission by the Illinois state bar before representing any future clients in Illinois. In that case, the court noted six examples of behavior by Bandas that constituted the practice of law in Illinois. *Id.* at ¶ 75. While the federal district court in the underlying case in which Edelson issued the subpoena is not bound by the findings of Illinois state appellate court, it does not appear that anyone, including Bandas, disputes that Bandas engaged in the unauthorized practice of law in Illinois. It is unclear why Edelson needs additional evidence to prove this allegation.

Edelson's argument that it needs the records to show that Bandas is a vexatious litigant is equally unpersuasive. When determining whether to declare someone a vexatious litigant, a court considers the number and nature of the cases filed. *See factors discussed in Safir*, 729 F.2d at 24. Edelson knows that Bandas filed objections in several cases and determination of his status as a vexatious litigant will involve the factors discussed in *Safir*. It is unclear how the financial records would help Edelson prove that Bandas is a vexatious litigant.

Also, as discussed above, Bandas has agreed to allow judgment to be entered against it, including a finding that it engaged in the unauthorized practice of law in Illinois and an order enjoining it from the further practice of law unless it obtains authorization from the Supreme Court of Illinois. Given the fact that the only remedy available to Edelson is an order enjoining Bandas from filing more lawsuits and Bandas has already indicated it would agree to such a sanction, the practical value of the documents sought by Edelson remains doubtful.

In response to a request to brief the issue of what relief the subpoenaed documents would provide to Edelson that cannot be obtained by Bandas's agreeing to an injunction, Edelson responded "admissible evidence." (D.E. 15 at p. 2). However, "admissible evidence" is not a form of relief. Edelson also asserts that because it rejected the Rule 68 offer of judgment that it cannot use the offer as evidence of Bandas's culpability, which is true. But the offer of judgment remains open and it is nonsensical to reject an offer of judgment and then seek evidence to prove the allegation of unauthorized practice of law to which Bandas has admitted.

Edelson also argues that the offer of judgment omits any discussion of what constitutes the unauthorized practice of law and that as a result, Bandas can defend itself by arguing that it understood the injunction to prevent conduct different from "whatever he happened to get caught doing." (D.E. 15 at p. 3). However, this would be true regardless of whether Bandas voluntarily agrees to the judgment or it is obtained after Edelson receives records from FCB. Moreover, any injunction against the unauthorized practice of law will proscribe future conduct and will not rely on the records of "how Bandas gets the money." (D.E. 7 at p. 6).

Edelson further argues that any injunction needs to enumerate specific acts that Bandas must not do and that without specifics, an injunction is just an order requiring Bandas to follow the law. Edelson is correct that "obey-the-law" injunctions "depart[] from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonable related to the violation." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013). But again,

Edelson has not shown how the bank records will help him obtain the specific injunctive relief that he seeks. Edelson knows that Bandas filed objections in nine cases that either were filed in Illinois or involved an Illinois objector (*See* D.E. 7 at p. 6, n. 1). If those acts violated the Illinois Attorney Act because Bandas is not licensed in Illinois, Edelson will be able to propose injunctive language to the court based on what happened in those cases. Notwithstanding Edelson's arguments to the contrary, the bank records showing how Bandas got paid do not appear relevant to Edelson's request for injunctive relief. Accordingly, FCB has met its burden of showing that the subpoena subjects it to an undue burden.

If Bandas withdraws the concession that he engaged in the unauthorized practice of law in Illinois or his agreement to an order enjoining him from practicing law without the permission of the Illinois Supreme Court, as well as to pay any costs and attorney's fees to which Edelson is entitled under Illinois law, Edelson may seek another subpoena of Bandas's bank records.

**CONCLUSION**

While the bulk of FCB's arguments presented in the motion to quash are unpersuasive, the fact that Bandas has agreed to the only remedy to which Edelson is entitled leads to the conclusion that the information sought in the subpoena is irrelevant and unnecessary to Edelson's request for injunctive relief. To require FCB to spend an estimated sixty hours plus additional resources to gather the requested information constitutes an undue burden on FCB. In addition, even without Bandas's agreement, Edelson already has a great deal of evidence showing specific ways in which Bandas

engaged in the unlicensed practice of law in Illinois. Accordingly, the motions to quash the subpoena (D.E. 1 and 2) are GRANTED. If Bandas's position changes with regard to his admission that he engaged in the unauthorized practice of law in Illinois or his agreement to having an order enjoining him from practicing law in Illinois until he obtains permission from the Illinois Supreme Court, Edelson may seek another subpoena.

ORDERED this 14th day of December, 2018.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE